UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

COLIN RUNGE,

    Plaintiff,

v.                                               Case No.: 3:10-cv-900-J-20JRK

OFFICER RANDALL SNOW, individually,
OFFICER D.A. PRATICO, individually,
GORDON SNOW, III, individually,
JOHN RUTHERFORD, in his official
capacity as Sheriff of the Consolidated
City of Jacksonville, Florida,

    Defendants.

_____

## ORDER

This cause is before this Court on Defendant, Gordon Snow, III's, Motion for Final Summary Judgment (Doc. 33, filed November 1, 2011); Defendant Officer D.A. Pratico's Motion for Final Summary Judgment (Doc. 34, filed November 1, 2011); Defendant John Rutherford's Motion for Final Summary Judgment (Doc. 35, filed November 1, 2011); Defendant Randall Snow's Motion for Summary Judgment (Doc. 37, filed November 2, 2011); Plaintiff Colin Runge's Consolidated Response to Defendants' Motions for Summary Judgment (Doc. 43, filed December 2, 2011); and Defendant Sheriff Rutherford's Reply to Plaintiff's Consolidated Response (Doc. 46, filed December 27, 2011).

**I. Background**

Plaintiff Colin Runge ("Plaintiff") initiated this action against the individual and official capacity defendants on October 1, 2010. (Doc. 1). It arises out of his early morning arrest on

October 13, 2007, in Jacksonville, Florida. The eight (8) count Complaint (Doc. 1) raises both federal and state law claims. The first four counts are all federal law claims, brought pursuant to 42 U.S.C. § 1983. Counts I and II assert claims against the individual officers for excessive force, in violation of the Fourth and Fourteenth Amendments to the United States Constitution, whereas Count III raises a claim for municipal liability against the Sheriff. Count IV alleges a conspiracy to violate civil rights against Defendant Officer Randall Snow ("Officer Snow") and Defendant Gordon Snow, III ("Gordon Snow"), Officer Snow's brother who is a private citizen.

The final four counts of the Complaint all involve state law claims. Counts V and VI assert that the Sheriff, in his official capacity, is vicariously liable for his officers' battery (Count V) and negligent use of excessive force (Count VI) against Plaintiff. Count VIII[1], also brought against the Sheriff in his official capacity, alleges that the Sheriff is vicariously liable for his employees' negligent supervision of a civilian observer. Finally, Count VII raises a state law claim of battery against Gordon Snow, individually.

Defendants have each filed motions for summary judgment on the respective claims brought against them. (Docs. 33, 34, 35, and 37). Because the motions raise many of the same issues and address related facts, this Court will resolve the them together in this Order.

## II. Statement of Facts

On October 13, 2007, at approximately 3:30 a.m., Officer Snow, an officer for the Jacksonville Sheriff's Office ("JSO"), was dispatched to the campus of Jacksonville University, where a student was allegedly causing a disturbance. Arrest Report (Doc. 40-1, filed November 2, 2011). At the time, Officer Snow was accompanied by his brother, Gordon Snow, who was

---

[1] Titled "Count X" in the Complaint. (Doc. 1 at 11).

riding along as a civilian observer. After arriving at the campus, Officer Snow arrested Plaintiff for disorderly intoxication and resisting an officer without violence. Plaintiff was handcuffed and placed in the rear of Officer Snow's patrol car. The Defendant brothers then transported Plaintiff to the sally port at the back of the Duval County Jail, where the relevant actions were, in large part, captured on video cameras[2] at the jail.[3]

Upon arriving at the jail, the video captures Officer Snow exiting the car and pulling Plaintiff out of the backseat. The footage clearly shows Plaintiff, who was still handcuffed, being pulled with such force that he and the officer both begin falling to the ground. The footage does not record the Plaintiff and officer landing on the concrete or what happens immediately thereafter. However, the parties do not dispute that Officer Snow directed Gordon Snow to bring him a hobble restraint[4] from the patrol vehicle while he held Plaintiff face down on the ground. Once Gordon Snow handed him the hobble restraint, Officer Snow placed Plaintiff in the restraint with the assistance of Defendant Officer D.A. Pratico ("Officer Pratico"), who had been observing the incident up to this time.

---

[2] The parties provided this Court with DVD recordings of the video. This Court has reviewed the video and utilized it, in conjuncture with the other depositions and affidavits, in deciding the pending motions for summary judgment.

[3] The Complaint alleges that Defendants Officer Snow and Gordon Snow pulled the patrol car over on the way to the jail and beat Plaintiff. (Doc. 1 at 3). However, Plaintiff makes no reference to these allegations in his response (Doc. 43) and fails to point to any evidence supporting them.

[4] This form of restraint is also known as the total appendage restraint position, fettering, or the hogtie position, where the hands and feet are strapped relatively closely together behind the back, rendering the subject immobile. *See Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1290 (11th Cir. 2009).

After a few minutes, Defendants are seen carrying Plaintiff toward the door to the jail, with Officer Snow holding Plaintiff's left arm, Gordon Snow holding his right, and Officer Pratico holding his legs. Defendants continue carrying him until Plaintiff's head makes contact with the door. The video clearly shows Plaintiff's head recoiling upon hitting the door. The defendants then place Plaintiff on the ground, still in the hobble restraint, on his stomach. Several minutes later, Plaintiff is carried into the intake area of the jail, where, after examination, the jail nurse refuses his admittance for medical reasons.

After being refused admittance, Plaintiff is recorded exitting the intake area, still in handcuffs but no longer in hobble restraint, and then being grabbed by Officer Snow and dragged to the patrol car by his shirt. Once there, Officer Snow is shown placing his forearm against Plaintiff's throat and forcing him backward until he is pinned against the hood of the car. From there, Officer Snow opens the back passenger door of the patrol car, pushes Plaintiff head-first into the backseat, and proceeds to kick or shove him with his foot. It is not clearly shown on the video where Officer Snow's foot makes contact. Plaintiff was then transported to the hospital for treatment. The hospital records indicate Plaintiff suffered hematoma and contusions of the face, as well as contusions to his chest. *See* Shands Jacksonville Medical Records (Doc. 40-5, filed November 2, 2011). Plaintiff also claims mental injuries as a result of the incident.

### III. Standard of Review

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file show that there is no genuine issue as to any material fact in dispute and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Fed. R. Civ. P. 56. The movant "always bears the

initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (internal quotations omitted). Once the movant has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

This Court recognizes that it may not decide genuine factual disputes at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). A dispute about a material fact is genuine, and summary judgment is inappropriate, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). The district court must view all evidence most favorably toward the nonmoving party, and all justifiable inferences are to be drawn in the nonmoving party's favor. *Whatley v. CNA Ins. Cos.*, 189 F.3d 1310, 1313 (11th Cir. 1999). If the district court finds, under the relevant standards, that reasonable jurors could find a verdict for the nonmoving party since a disputed factual issue exists, judgment should be denied. However, there must exist a conflict in substantial evidence to pose a jury question. *Walker v. Nationsbank of Florida N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995) (quoting *Verbraeken v. Westinghouse Electric Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989)).

## IV. Discussion

### a. Federal Claims

#### 1. Count I (Excessive Force - Defendant Officer Snow)

Officer Snow maintains that he is entitled to qualified immunity because he used the minimal amount of force necessary to restrain Plaintiff from damaging JSO property and keep him from committing further destructive acts against JSO property or violence against any JSO officer. He argues that the impact with the jail door was unintentional and, moreover, Plaintiff only received *de minimus* injuries and was given a full complement of medical attention.

"Section 1983 enables a citizen to sue any person acting under color of state law who violates his or her federal constitutional rights." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009). However, to avoid the threat of § 1983 litigation that "may stymie a police officer's ability to perform his duties effectively" the doctrine of qualified immunity has arisen. *Id.* at 1165. This doctrine "protects a police officer from liability under § 1983 if he was acting within his discretionary authority and his conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 1166 (internal quotations omitted.).

"'The defense of qualified immunity represents a balance between the need for a damages remedy to protect the rights of citizens and the need for government officials to be able to carry out their discretionary functions without the fear of constant baseless litigation.'" *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010)(quoting *GJR Invs., Inc. v. Cnty of Escambia*, 132 F.3d 1359, 1366 (11th Cir. 1998)).

Courts are "obliged to grant a law enforcement officer qualified immunity unless the plaintiff can demonstrate: first, that the facts when viewed in a light most favorable to the plaintiff establish a constitutional violation; and, second, that the illegality of the officer's actions was 'clearly established' at the time of the incident." *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009). The determination of whether the right is clearly established "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)(quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

In assessing an individual officer's claim for qualified immunity, this Court should engage in a "two-step process: once a defendant raises the defense, the plaintiff bears the burden of establishing both that the defendant committed a constitutional violation and that the law governing the circumstances was already clearly established at the time of the violation." *Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010). Following *Pearson v. Callahan*, 555 U.S. 223 (2009), these elements can be considered at the discretion of the court. *Id.*

"'Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit.'" *Id.* (citing *Lassiter v. Ala. A&M Univ., Bd. of Trs.*, 28 F.3d 1146, 1149 (11th Cir.1994) (en banc)). The salient question therefore is whether the state of the law at the time of the actions in question gave the individual officers fair warning that their alleged actions were unconstitutional. *Id.* "Qualified immunity protects government officials performing discretionary functions from liability if their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Snider v. Jefferson State Cmty. Coll.*, 344 F.3d 1325, 1327 (11th

7

Cir. 2003) (quoting *Hope v. Pelzer*, 122 S.Ct. 2508, 2515 (2002)).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2085 (2011)(quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Moreover, "government actors are not required to err on the side of caution." *Doe v. Braddy*, 673 F.3d 1313, 1317-18 (11th Cir. 2012).

In this Circuit, rights are "clearly established" by decisions of the Supreme Court, the Eleventh Circuit, or the highest court of the state in which the case arose, in this case Florida. *Hamilton v. Cannon*, 80 F.3d 1525, 1532 n. 7 (11th Cir. 1996). "A judicial precedent with materially identical facts is not essential for the law to be clearly established, but the preexisting law must make it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." *Youmans*, 626 F.3d at 562. Essentially, the law must give the individual defendants "'fair warning' that [their] conduct violated the Fourth Amendment." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011). This inquiry must be made "'in light of the specific context of the case, not as a broad general proposition.'" *Roberts v. Spielman*, 643 F.3d 899, 905 (11th Cir. 2011)(quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

Turning now to the question of appropriate force, "[t]he Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee*, 284 F.3d at 1197. A Sheriff's officer is entitled to "qualified immunity for use of force during an arrest if an objectively reasonable officer in the same situation could have believed the use of force was not excessive." *Brown v. City of*

8

*Huntsville*, 608 F.3d 724, 738 (11th Cir. 2010). In "determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Lee*, 284 F.3d at 1197 (brackets and internal quotation marks omitted). The "[u]se of force must be judged on a case-by-case basis from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Brown*, 608 F.3d at 738 (internal quotation and citations omitted).

In order to balance the necessity of using some force attendant to an arrest against the arrestee's constitutional rights, "a court must evaluate a number of factors, 'including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Lee*, 284 F.3d at 1197-98 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Construing the facts in the light most favorable to the plaintiff, it is apparent that level of force used by Officer Snow to carry out Plaintiff's arrest was unreasonable. Although it is undisputed that Officer Snow had probable cause to arrest Plaintiff, the alleged crimes were relatively less severe–disorderly intoxication and resisting arrest without violence. Moreover, at the time of the asserted use of force, Plaintiff was secured in either handcuffs or a full hobble restraint and did not appear to be offering resistance. Clearly, he presented almost no risk of flight and was of little or no danger to Officer Snow or any other officer.

Throughout his motion, Officer Snow continually focuses on Plaintiff's "obnoxious" and drunken conduct, which he alleges included kicking the interior of the police vehicle, resisting being put in the hobble restraint, and refusing to obey commands. (*See* Doc. 37 at 9). Yet, even

if accepted, none of the referenced conduct excuses Officer Snow's actions *after* securing Plaintiff. The video evidence shows Officer Snow guiding Plaintiff's head into the door to the jail with enough force to cause Plaintiff's head to obviously recoil, while Plaintiff's arms and legs were secured. This application of force alone may be viewed as excessive. *Cf. Lee*, 284 F.3d at 1198 ("Even though [the officer] had lawful authority to effect a custodial arrest and to use a reasonable amount of force to subdue and secure [the plaintiff], we can discern no reason, let alone any legitimate law enforcement need, for [the officer] to have led [the plaintiff] to the back of her car and slammed her head against the trunk after she was arrested and secured in handcuffs."). Though Officer Snow argues that the impact was unintentional, when the evidence is viewed in the light most favorable to Plaintiff, it may reasonably be inferred that the contact was made intentionally. Moreover, within minutes after the nurse rejected Plaintiff's admittance to the jail due to a head injury, Officer Snow is also captured choking and kicking a still handcuffed Plaintiff.

Officer Snow's assertion that "[t]he force used . . . against [Plaintiff] was *de minimis* at best[,]" does not aid his cause in this instance. (Doc. 37 at 10). That "the fortuity of the circumstances protected the plaintiff from suffering more severe physical harm" does not render his unreasonable force reasonable. *Lee*, 284 F.3d at 1200. Indeed, the Eleventh Circuit has held that an officer's use of force under similar circumstances was "wholly unnecessary to any legitimate law enforcement purpose." *Id.* at 1199 (addressing the situation where an officer took an arrestee to the back of her car and slammed her head against the trunk after she was arrested, handcuffed, and completely secured, and after any danger to the arresting officer as well as any risk of flight had passed). Foregoing the traditional analysis of whether the law was clearly

established at the time of the incident, the court in *Lee v. Ferraro* determined that the grossly disproportionate force used in the case was clearly established as a constitutional violation because no reasonable officer could have believed that the officer's actions were legal. *Id.* at 1198-99. It must follow, then, that no reasonable officer in Officer Snow's position would conclude that running the head of a hobbled arrestee against the door to the jail, and then proceeding the kick and choke him while still handcuffed, is lawful. Therefore, Officer Snow's conduct was clearly established as a constitutional violation and he is not entitled to qualified immunity.

## 2. Count II (Excessive Force - Defendant Officer Pratico)

Like Officer Snow, Officer Pratico argues that he is entitled to qualified immunity because he used the minimal amount of force necessary to restrain Plaintiff from damaging JSO property and keep him from committing further acts of destructiveness against JSO property or violence against any JSO officer, and the injuries sustained by Plaintiff were minimal.

The standards of law for qualified immunity applied to Officer Snow also apply to Officer Pratico. Therefore, in assessing whether Officer Pratico's actions constituted a constitutional violation, this Court must view the facts in the light most favorable to Plaintiff. *Oliver v. Fiorino*, 586 F.3d at 905. Officer Pratico asserts that he only had the rear of Plaintiff's legs at the time Plaintiff's head bumped the door and that the video establishes that the head bumping was accidental. (Doc. 34 at 12). Yet, based on this Court's review of the video evidence, material disputes of fact remain as to Officer Pratico's intent and whether he was the moving force behind Plaintiff's head hitting the jail door. *See Scott v. Harris*, 550 U.S. 372, 380-81 (concluding that where a videotape of the incident existed in the record and the factual assertions of that party

11

were blatantly contradicted by the record, such that no reasonable jury could have believed him, it is not improper to view the facts in the "light depicted by the videotape."); *Sims v. Quilliams*, 378 Fed. Appx. 945, 946 (11th Cir. 2010) (concluding court properly relied upon video and audio tapes in determining the facts rather than a party's contradictory assertions).

Construing the facts in the light most favorable to Plaintiff, Officer Pratico's actions, like Officer Snow's, were unreasonable under the Fourth Amendment and clearly established as a constitutional violation because no reasonable officer could have believed that his actions were legal. *Cf. Lee*, 284 F.3d at 1198-99. As such, Officer Pratico's motion for summary judgment on Count II is due to be denied.

### 3. Count III (Municipal Liability - Defendant Sheriff Rutherford)

The Sheriff asserts that summary judgment is proper on the § 1983 municipal liability claim both because there was no constitutional violation and because the facts in the record fall short of establishing *Monell* liability.

The "touchstone" of a § 1983 claim against a local authority "is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution . . . ." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A local authority may also be sued for constitutional violations pursuant to a "custom" even when that "custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91.

However, "in order to be held liable for a § 1983 violation, a municipality must be found to have *itself* caused the constitutional violation at issue; it cannot be found liable on a vicarious liability theory." *Skop v. City of Atlanta*, 485 F.3d 1130, 1145 (11th Cir. 2007). Therefore, "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights

were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

This official policy can include the actual policy, the acts of the policymaking officials, and "practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011). It is these actions for which the local government will be held responsible. *Id.*

In "limited circumstances" a local government may be liable under § 1983 for its affirmative decision "not to train certain employees about their legal duty to avoid violating citizens' rights." *Id.* at 1359. However, a local authority's "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* To satisfy § 1983, in a failure to train context, this failure "must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact. Only then can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* (internal citations and quotations omitted).

The "stringent standard" of deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* When policymakers have "actual or constructive notice" that an omission in a training program causes employees to violate citizens' constitutional rights, "the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* A "policy of inaction" can be the "functional equivalent of a decision by the city itself to violate the Constitution." *Id.*

13

However, "'[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability' against a municipality." *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011)(quoting *City of Okla. City v. Tuttle*, 471 U.S. 808 (1985)). "A pattern of similar constitutional violations is ordinarily necessary. A single incident would not be so pervasive as to be a custom because a custom must be such a longstanding and widespread practice that it is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Id.* (internal citations and marks omitted).

It has already been determined that Plaintiff suffered a constitutional violation when Officer Snow used excessive force. Therefore, turning to the second prong of the analysis, Plaintiff must establish that the city had a custom or policy that constituted deliberate indifference to that constitutional right.

In the Complaint, Plaintiff alleges five total instances of excessive force over a seven year period by the Sheriff in an apparent effort to plead a pattern of tolerating excessive force, and also raises the allegation that the officers acting on the scene were the final policy makers for the JSO. It appears that Plaintiff has abandoned these arguments and now strictly relies on a ratification theory. (*See* Doc. 43 at 13). However, even if Plaintiff has not abandoned them, he has failed to raise a genuine issue of material fact that would preclude the entry of summary judgment on these grounds. *Cf., e.g., Ludaway v. City of Jacksonville*, 245 F. App'x 949, 951-52 (11th Cir. 2007) (finding that the plaintiff had failed to establish a widespread custom of using excessive force where only 10 out of 170 excessive force claims over a two year period were sustained, and the officers in those cases were disciplined or resigned while under investigation).

In relation to his final argument, the theory of ratification, Plaintiff notes that "[w]hile Snow did receive some discipline, none of it pertained to the most egregious act in the case, using a fully secured, hog-tied Mr. Runge as a battering ram[, and f]urther, Pratico received no discipline whatsoever . . . ." (Doc. 43 at 13). Plaintiff maintains that this lack of discipline could lead a reasonable jury to conclude that the Sheriff ratified Officer Snow's and Officer Pratico's conduct and, thereby, established a custom of excessive force. *Id.*

The case law cited in Plaintiff's own response provides that "a persistent failure to take disciplinary action against officers can give rise to the inference that a municipality has ratified conduct, thereby establishing a 'custom' within the meaning of *Monell*." *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985). Notwithstanding the fact that Officer Snow *was* disciplined for much of his conduct during the arrest, *see* Written Reprimand (Doc. 40-2, filed November 2, 2011), a failure to discipline two officers for a single incident can hardly be considered a *persistent* failure to take disciplinary action, which established a custom that caused the alleged violation of constitutional rights. As such, the Sheriff's request for summary judgment on Plaintiff's claim of municipal liability is due to be granted.

### 4. Count IV (Conspiracy to Violate Civil Rights - Defendants Officer Snow and Gordon Snow)

Defendants Officer Snow and Gordon Snow contend they are entitled to summary judgment on Plaintiff's claim that they conspired to deprive Plaintiff of his constitutional rights, in violation of § 1983. In addition to their continuing argument that Plaintiff suffered no constitutional violation, the defendants contend that there has been no evidence offered that any understanding was reached to deny the Plaintiff his rights. (*See* Doc. 33 at 12; Doc. 37 at 14).

In order to prove a § 1983 conspiracy, the plaintiff "must show that the parties reached an understanding to deny the plaintiff his or her rights. The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy." *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) (internal quotation marks and citations omitted). "'[T]he acts of a private party are fairly attributable to the state on certain occasions when the private party acted in concert with state actors.'" *Id.* (quoting *Addickes v. S.H. Kress & Co.*, 398 U.S. 144, 155–56 (1970)). A "smoking gun" is not essential to demonstrate the "'understanding' and 'willful participation' between private and state defendants [] necessary to show the kind of joint action that will subject private parties to § 1983 liability." *Id.* at 469.

According to Plaintiff, the Defendants' motion for summary judgment must be denied. He argues that his constitutional rights were violated by Defendants Officer Snow and Gordon Snow when they rammed his head into a metal door, while fully secured in a hobble restraint. Further, Plaintiff suggests that it can be "inferred from the Snow brothers' concert of action that they had an understanding or agreement to violate [his] Fourth Amendment rights . . . ." (Doc. 43 at 14).

This Court has already determined that, construing the evidence in the light most favorable to the non-movant, Plaintiff suffered a constitutional violation when Officer Snow ran Plaintiff's head into the jail door while Plaintiff was in a hobble restraint. During this incident, the video evidence shows Gordon Snow also holding one of Plaintiff's arms and, therefore, retaining as much control of Plaintiff's head as his brother, Officer Snow. This was done after spending the night on a voluntary ride-along with his Defendant brother, during which he

16

observed the arrest of Plaintiff. While not a smoking gun, there exist genuine issues of material fact from which a reasonable jury could find that Officer Snow and Gordon Snow reached an understanding to deny the plaintiff his constitutional rights. Accordingly, the defendants' motion for summary judgment on Count IV is due to be denied.

### b. Florida Law Claims

#### 1. Pre-Suit Notice

As an initial matter, the Sheriff asserts that all of Plaintiff's state law claims against him are barred by Plaintiff's failure to give proper pre-suit notice of his intent to sue the Sheriff in his official capacity. Specifically, the Sheriff notes that it "is uncontested that the Plaintiff did not give six (6) months pre-suit notice of his intent to sue in this case, as the notice letter shows on its face that it was sent the very same day the lawsuit was filed." (Doc. 35 at 21); *see* Notice Letter (Doc. 40-24, filed November 2, 2011).

Florida Statute § 768.28(6)(a) states:

> An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also . . . presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing . . . . [T]he failure of the Department of Financial Services or the appropriate agency to make final disposition of a claim within 6 months after it is filed shall be deemed a final denial of the claim for purposes of this section.

"Florida law requires strict compliance with the notice requirement of section 768.28(6) in order to maintain an action against the state, its agencies or subdivisions, and a suit may be dismissed for lack of notice." *Rumler v. Dep't of Corrs.*, 546 F. Supp. 2d 1334, 1344 (M.D. Fla. 2008). Nevertheless, "under Florida law, a complaint brought without first providing statutory notice must be dismissed without prejudice in order to allow the plaintiff to comply with the

17

notice requirement, if the time has not expired to provide notice." *Id.* (internal quotation marks omitted).

Plaintiff appears to concede that he did not strictly comply with the notice requirement prior to filing suit. However, it is apparent that the Sheriff did receive notice within the three-year window on the same date Plaintiff filed suit, now more than a year and seven months ago. *See* Notice Letter (Doc. 40-24) (stamped "Received OCT 4 - 2010 Office of General Counsel"); *see also* (Doc. 35 at 21) (Sheriff acknowledges that "the notice letter shows on its face that it was sent the very same day the lawsuit was filed."). Though the Sheriff raised the issue in its Answer (Doc. 9, filed October 26, 2010), he waited over a year to bring the issue before the Court in his motion for summary judgment. Moreover, the Sheriff fails to identify any specific prejudice caused by the late notice. In cases such as this, the Eleventh Circuit, applying Florida law, has viewed the notice issue as cured and allowed the original complaint to stand. *See, e.g., Hattaway v. McMillian*, 903 F.2d 1440, 1446-50 (11th Cir. 1990) (citing *Askew v. County of Volusia*, 450 So. 2d 233, 235 (Fla. 5th DCA 1984)); *see also Rumler*, 546 F. Supp. 2d at 1346 (citing *Hattaway* for the proposition that where "the defendant had not claimed that he did not receive notice, . . . the passage of six months essentially 'cured' the plaintiff's failure to wait the required six months before bringing the suit"). Accordingly, the Sheriff's request to dismiss all state law claims against him due to lack of notice is due to be denied.

### 2. Count V (Battery - Defendant Sheriff Rutherford)

In Count V of the Complaint, Plaintiff claims that the Sheriff is vicariously liable for battery under Florida law. The Sheriff acknowledges that the outcome of this claim is dependent on this Court's ruling on whether there was excessive force committed by Officer Snow, under

the Fourth Amendment. (Doc. 35 at 20); *see Slone v. Judd*, No. 8:9-CV-1175-T-27TGW, 2011WL 1124618, at *20 (M.D. Fla. Mar. 25, 2011) ("The disputed issues of material fact that preclude summary judgment on [the plaintiff's] federal excessive force claim likewise preclude summary judgment on the state law assault and battery claims."). Accordingly, because summary judgment was denied on the excessive force claim against Officer Snow, the Sheriff's motion as to Count V is also due to be denied.

### 3. Count VI (Negligence - Defendant Sheriff Rutherford)

Plaintiff concedes that the Sheriff should be entitled to summary judgment as to Count VI of the Complaint. As such, the Sheriff's motion for summary judgment on Count VI shall be granted.

### 4. Count VII (Battery - Defendant Gordon Snow)

Defendant Gordon Snow raises two arguments in support of his request for summary judgment on Plaintiff's state law battery claim: 1) the bumping of Plaintiff's head into the jail door was unintentional; and 2) Fla. Stat. § 901.18 precludes civil liability for Gordon Snow's conduct because it was reasonable under the statute. Nevertheless, similar to the battery claim against the Sheriff, the disputed issues of material fact that preclude summary judgment on Plaintiff's § 1983 conspiracy claim (Count IV) also preclude summary judgment on the state law battery claim (Count VII). Therefore, Defendant Gordon Snow is not entitled to summary judgment on Count VII.

### 5. Count XIII (Negligence - Defendant Sheriff Rutherford)[5]

Count XIII of the Complaint alleges that JSO employees breached their duty to prevent a

---

[5] Titled "Count X" in the Complaint. (*See* Doc. 1 at 11).

civilian observer from causing harm to Plaintiff. The sole ground presented by the Sheriff for summary judgment on the claim is that Defendant Gordon Snow did not use any force against Plaintiff. However, as already determined above, disputed issues of material fact exist on this issue. Accordingly, the Sheriff's motion is due to be denied in relation to Count XIII.

Therefore, it is **ORDERED** and **ADJUDGED**:

1. Defendant, Gordon Snow, III's, Motion for Final Summary Judgment (Doc. 33, filed November 1, 2011) is **DENIED**;

2. Defendant Officer D.A. Pratico's Motion for Final Summary Judgment (Doc. 34, filed November 1, 2011) is **DENIED**;

3. Defendant John Rutherford's Motion for Final Summary Judgment (Doc. 35, filed November 1, 2011) is **GRANTED** in part and **DENIED** in part. The Clerk of the Court is directed to enter judgment in favor of Defendant John Rutherford on Counts III and VI. In all other respects, the motion (Doc. 35) is denied; and

4. Defendant Randall Snow's Motion for Summary Judgment (Doc. 37, filed November 2, 2011) is **DENIED**.

**DONE AND ENTERED** in Jacksonville, Florida, this 31st day of May, 2012.

HARVEY E. SCHLESINGER
United States District Judge

Copies to:
Bryan E. Demaggio, Esq.
Matthew R. Kachergus, Esq.
William J. Sheppard, Esq.
William J. Scott, Esq.
Paul A. Daragjati, Esq.
Phillip Michael Vogelsang, Esq.
Jon R. Phillips, Esq.